UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMERICAN ART CLAY COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:24-cv-00465-TWP-MKK |
| ) | |
| THE CINCINNATI INSURANCE COMPANY, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant The Cincinnati Insurance Company, Inc. ("Cincinnati") (Filing No. 29). Plaintiff American Art Clay Company, Inc. ("AMACO"), initiated this action alleging breach of contract and bad faith and seeking a declaratory judgment that Cincinnati has a duty to defend and indemnify AMACO in a series of underlying lawsuits pursuant to the parties' insurance agreement (Filing No. 1). Cincinnati moved to dismiss the Complaint, and AMACO then filed an Amended Complaint, which is the operative pleading (Filing No. 24). Cincinnati now moves to dismiss the Amended Complaint. For the following reasons, the Motion to Dismiss is **granted**.

**I.      BACKGROUND**

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and draws all inferences in favor of AMACO as the non-moving party. *See Alarm Detection Sys. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).

AMACO has produced and sold various categories of art supplies since 1919, including art clay (Filing No. 24 at 3). In the 1950s, AMACO began incorporating talc, a naturally occurring mineral which can contain asbestos, from the R.T. Vanderbilt Company in the production of a limited type of art clay. *Id.* AMACO purchased multiple insurance policies from Cincinnati from January 1, 1993, to when it filed its Complaint. *Id.* at 7. The policy effective from January 1, 1993, to January 1, 1996, contains the following asbestos exclusion ("Asbestos Exclusion #1"):

> This insurance does not apply to, and the Company shall have no duty to investigate or defend claims for "bodily injury" or "property damage" which arise out of, are attributable to or are any way related to asbestos, in any form or which may be transmitted in any manner.

*Id.* at 8. Then, all policies effective from January 1, 1996, to the present, contain the following asbestos exclusion ("Asbestos Exclusion #2"):

> This insurance does not apply to:
>
> > o. Asbestos
> >
> > > "bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos, in any form or transmitted in any manner.

(Filing No. 1-25 at 5). In the policy, "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.*

From February 27, 2017, to February 8, 2024, AMACO was named in at least fifty-eight personal injury lawsuits in which individuals alleged that they were injured by exposure to asbestos and asbestos-containing products produced, manufactured, and sold by AMACO (the "Lawsuits") (*See* Filing No. 24 at 8-29). When AMACO tendered each of the Lawsuits to Cincinnati, coverage was denied pursuant to Asbestos Exclusion #1 and Asbestos Exclusion #2 (collectively, the "Asbestos Exclusions"). *Id.* at 30. This litigation followed.

2

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. Of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.     DISCUSSION

AMACO asserts three claims against Cincinnati: Count I: Declaratory Judgment; Count II: Breach of Contract; and Count III: Breach of the Duty of Good Faith and Fair Dealing ([Filing No. 24 at 31-33](#)). The claims are based on Cincinnati's denial of coverage for the Lawsuits.

Cincinnati moves to dismiss AMACO's Amended Complaint for three reasons. First, Cincinnati argues that pursuant to Federal Rule of Civil Procedure 15, AMACO's Amended Complaint was untimely because AMACO did not receive leave of court to file more than twenty-one days after Cincinnati filed its Motion to Dismiss the original Complaint. Second, Cincinnati asserts that Count I (Declaratory Judgment) and Count II (Breach of Contract) fail as a matter of law because the Asbestos Exclusions bar coverage. Finally, Cincinnati contends that Count III (Breach of the Duty of Good Faith) also fails as a matter of law. The Court will first address the timeliness issue, and then discuss Counts II and III before addressing Count I.

**A.     Timeliness of the Amended Complaint**

A party may file an amended complaint as of right twenty-one days after a Rule 12(b) motion to dismiss is filed. Fed. R. Civ. P. 15(a)(1)(B). Cincinnati filed its original Motion to Dismiss on April 9, 2024 ([Filing No. 13](#)). Then, thirty days later, on May 10, 2024, AMACO filed its Amended Complaint ([Filing No. 24](#)). Cincinnati argues that "[b]ecause the amended complaint was filed more than 21 days after the motion to dismiss was filed, AMACO needed either Cincinnati's written consent or leave of court" pursuant to Federal Rule of Civil Procedure 15(a)(2) ([Filing No. 30 at 7](#)). AMACO argues that they had reached out to Cincinnati to request a fourteen-day extension of time to respond to the original Motion to Dismiss and that Cincinnati confirmed it had no objections to such request ([Filing No. 51 at 16](#)). AMACO understood its request to

Cincinnati to include an extension of the deadline to amend the Complaint as a matter of course. *Id.*

Courts may extend deadlines upon a motion showing good cause and excusable neglect. Fed. R. Civ. P. 6(b)(1)(B); *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014). AMACO contends that its mistake "stemmed from a good faith misunderstanding between counsel." ([Filing No. 51 at 17](Filing No. 51 at 17)). AMACO believed that Cincinnati understood its request to include amending the Complaint and argues Cincinnati has not suffered prejudice as a result of this misunderstanding. The Court agrees. AMACO's request to extend its deadline to amend the Complaint is **granted**, and the Amended Complaint is deemed timely filed.

**B.    Count II: Breach of Contract**

As a federal court sitting in diversity, this Court must apply Indiana substantive law to decide issues of insurance coverage. *Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004). In Indiana, the terms of insurance policies should be construed using the same rules that apply to other contracts. *Erie Indem. Co. v. Estate of Harris by Harris*, 99 N.E.3d 625, 630 (Ind. 2018). "Although some 'special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and insured's [*sic*], if a contract is clear and unambiguous, the language therein must be given its plain meaning.'" *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002) (quoting *Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096, 1101 (Ind. 1985)). However, "'[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer' and the policy language is viewed from the standpoint of the insured." *Id.* (alteration in original) (quoting *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000)).

Indiana courts construe insurance policies as a whole and consider all the provisions of the contract and not just any one word, phrase, or paragraph. *Briles v. Wausau Ins. Cos.*, 858 N.E.2d

208, 213 (Ind. Ct. App. 2006). Courts construe the contract in a manner that harmonizes all provisions, rather than in a way that supports conflicting interpretations. *Id.* In doing so, a court "should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 676 (Ind. Ct. App. 2007).

In Indiana, the insured bears the burden of showing its claim is covered by the policy. *Allstate Ins. Co. v. Neumann*, 435 N.E.2d 591, 594 (Ind. Ct. App. 1982). Upon such showing, the burden shifts to the insurer to prove that an exclusion applies. *Mut. Hosp. Ins., Inc. v. Hagner*, 475 N.E.2d 32, 34 (Ind. Ct. App. 1984).

AMACO asserts, and Cincinnati does not dispute, that the Lawsuits would be covered by the policies absent the Asbestos Exclusions (Filing No. 24 at 29). Thus, AMACO's initial burden has been met. However, Cincinnati contends that the Asbestos Exclusions unambiguously bar coverage for the Lawsuits because the actions are for personal injuries caused by exposure to asbestos allegedly present in products produced, manufactured, or sold by AMACO (Filing No. 30 at 7). Cincinnati therefore concludes that AMACO's "claims for declaratory judgment and breach of contract fail as a matter of law and should be dismissed." *Id.* The Court agrees.

Both Asbestos Exclusions bar coverage for claims of "'bodily injury' . . . arising out of, attributable to, or any way related to asbestos, in any form or transmitted in any manner." (Filing No. 1-25 at 5). The plain and unambiguous language of the Asbestos Exclusions bar coverage for the Lawsuits, as they allege personal injury due to exposure to asbestos contained in AMACO's products. Any reasonable policyholder would understand the Asbestos Exclusions to bar coverage for lawsuits brought due to asbestos exposure. Thus, there can be no reasonable dispute as to the interpretation of the Asbestos Exclusions.

AMACO argues that the Asbestos Exclusions do not apply for three reasons: (1) the allegations in the Lawsuits do not trigger the Asbestos Exclusions, (2) AMACO's products do not contain asbestos, and (3) the Asbestos Exclusions are ambiguous (*See* Filing No. 51). The Court will address each of AMACO's arguments in turn.

### 1. Whether the Lawsuits Trigger the Asbestos Exclusions

AMACO argues that Cincinnati has the burden of proving the Asbestos Exclusions apply and that they cannot do so from the allegations of the Lawsuits. AMACO cites *American States Insurance Co. v. Aetna Life and Casualty Co.*, arguing that Cincinnati "must 'make a reasonably complete investigation of the facts, before it can deny coverage and consequent defense.'" (Filing No. 51 at 6 (quoting 379 N.E.2d 510, 518 (1978))). AMACO then surmises that Cincinnati must investigate the facts of each and every one of the Lawsuits before it can deny coverage. *Id.*

However, AMACO's argument conflicts with Indiana Supreme Court precedent in *Transamerica Insurance Services v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991). In *Kopko*, the insured offered self-serving evidence relevant to his liability defenses in an attempt to create a question of fact surrounding the insurer's duty to defend. *Id.* However, the Indiana Supreme Court held that "[t]he duty to defend is determined solely by the nature of the complaint" and the "proposed defense to the complaint . . . does not change the nature of the action." *Id.*

AMACO argues that this case is akin to *Monroe Guaranty Insurance Co. v. Monroe*, 677 N.E.2d 620 (Ind. Ct. App. 1997), where the Indiana Court of Appeals distinguished its case from *Kopko* (Filing No. 51 at 7). In *Monroe*, the insurer filed for declaratory judgment asserting that it had no duty to defend an employer for injuries suffered by its employee while on the job. *Id.* at 621. Such assertion was based on an exclusion pertaining to "bodily injury intentionally caused or aggravated by [the employer]." *Id.* at 621–622. The Indiana Court of Appeals rejected the insurer's

7

argument that pursuant to *Kopko* the duty to defend is determined solely by the nature of the complaint, and it held that the insurer had to conduct a reasonable investigation before denying coverage. *Id.* at 622. The Indiana Court of Appeals distinguished *Monroe* from *Kopko* because *Kopko* did not address "a dispute concerning the facts underlying the complaint." *Id.* at 623. And therefore, the Indiana Supreme Court in *Kopko* "had no need to look beyond the allegations." *Id.*

AMACO argues that this Court should follow *Monroe* because AMACO denies the allegations in the Lawsuits, and because "[t]he Lawsuits should have immediately raised Cincinnati['s] suspicions, given that AMACO—a manufacturer of art supplies—was accused of selling asbestos and asbestos-containing products." (Filing No. 51 at 8). The Court disagrees.

*Monroe* was premised on an intent-based exclusion. *See Monroe*, 677 N.E.2d 620. That is, the exclusion applied only if the facts showed that the employer specifically intended to injure the employee rather than, as here, an injury occurred regardless of intent. Thus, a narrow departure from *Kopko*, holding that an insurer must at least investigate whether such intent was present before denying coverage, was warranted. *Id.* The present case does not contain such an intent-based exclusion. Rather, the exclusion bars coverage for *any claims of bodily injury arising out of or in any way related to asbestos*. The Lawsuits allege personal injury due to exposure to asbestos from AMACO's products. There was no need for Cincinnati to look beyond the allegations. Any result from the Lawsuits would fall squarely within the exclusion. As such, *Kopko* applies to this case, and Cincinnati was not required to investigate each of the Lawsuits prior to denying coverage.

Further, even if Cincinnati should have conducted an investigation before denying coverage, such investigation would have been immaterial. An extensive investigation into each and every one of the Lawsuits would not have transformed the Lawsuits into anything more than actions for personal injury due to alleged asbestos exposure. And as stated above, the Asbestos

8

Exclusions bar coverage for bodily injury claims that are in "any way related to asbestos," not solely bodily injury in fact caused by asbestos. The Lawsuits therefore triggered the Asbestos Exclusions and Cincinnati did not improperly deny coverage without having investigated the Lawsuits.

### 2. Whether AMACO's Affirmative Defense Nullifies the Asbestos Exclusion

AMACO presents various arguments as to why each of the two Asbestos Exclusions should not apply.

Concerning Asbestos Exclusion #1, AMACO argues that the Court must accept as true its factual allegations that its products do not contain asbestos and that the Asbestos Exclusions only apply to "asbestos-related 'bodily injury,'" (Filing No. 51 at 9). Asbestos Exclusion #1 states,

> This insurance does not apply to, and [Cincinnati] shall have no duty to investigate or defend claims for "bodily injury" or "property damage" which arise out of, are attributable to or are any way related to asbestos, in any form or which may be transmitted in any manner.

(Filing No. 24 at 3). AMACO argues that the phrase that follows "does not apply to" is missing a closing comma, leading to two possible interpretations of this exclusion (Filing No. 51 at 10). AMACO asserts that if a closing comma appeared after the word "for," that would mean "the facts underlying the alleged injury" trigger the exclusion and not "the facial allegations." AMACO contends that if the comma had appeared after the word "defend," then the inverse would be true.

AMACO attempts to "invite judicial construction by creating ambiguity" where none exists. *Saturday Evening Post Soc'y, Inc. v. Cincinnati Ins. Co.*, 658 F. Supp. 3d 672, 677 (S.D. Ind. 2023). Such attempts are impermissible. *Id.* The exclusion plainly and unambiguously bars coverage for actual and alleged bodily injury which arises out of, is attributable to, or is in any way related to asbestos. The mere non-existence of a supposed closing comma does not change this meaning. AMACO urges the Court to construe the exclusion to essentially mean that Cincinnati

9

must defend AMACO from all claims of bodily injury resulting from asbestos exposure but somehow does not need to defend AMACO if actual asbestos exposure occurred. Such a construction is unreasonable.

AMACO's last argument concerning Asbestos Exclusion #1 is that the word "claim" is not defined and could therefore refer to either facial allegations or the facts giving rise to a cause of action (Filing No. 51 at 10). However, failure to define a term does not make it ambiguous. *Erie*, 99 N.E.3d at 630. Further, the word "claim" is plainly defined by the Merriam-Webster Dictionary as "a demand for something due or believed to be due." *Claim*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/claim (last visited Mar. 28, 2025). Such definition encompasses both facial allegations and facts giving rise to a cause of action. Any reasonable policyholder would understand what is meant by "claims of 'bodily injury.'" This is, once again, an impermissible attempt by AMACO to create ambiguity when there is none. *Saturday Evening Post*, 658 F. Supp. 3d at 677.

Asbestos Exclusion #2 states as follows:

This insurance does not apply to:

    o. Asbestos

        "bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos, in any form or transmitted in any manner.

(Filing No. 1-25 at 5). AMACO once again argues that Asbestos Exclusion #2 only applies to "the facts underlying the Lawsuits, and not the facial allegations." (Filing No. 51 at 11). Such argument is equally unreasonable for the same reasons explained above. While Asbestos Exclusion #2 does not specifically say it applies to "claims" for bodily injury, *Kopko* still applies, and coverage may be denied based on the nature of the Lawsuits. 570 N.E.2d at 1285 ("When the nature of the claim

is obviously not covered by the policy of insurance, there is no duty to defend."). Thus, AMACO's arguments attempting to inject ambiguity into the plain language of the Asbestos Exclusions fail.

AMACO next argues that its products do not contain asbestos, and the Court must take such assertion as true on a Rule 12(b)(6) motion. *Id.* AMACO surmises that the reasonable inference is that the plaintiffs' personal injuries in the Lawsuits were not caused by asbestos. However, even if such assertion were true, that issue is not before the Court. Rather, the issue before the Court is whether the insurance policies exclude coverage for personal injury related to asbestos. Whether AMACO is liable to the plaintiffs and what defenses AMACO may use in the Lawsuits is for the courts presiding over the Lawsuits to determine. Here, though, *Kopko* controls, and Cincinnati's duty to defend is determined by the nature of the complaints filed in the Lawsuits. *Id.*

AMACO also argues that "[s]ome plaintiffs in the Lawsuits have argued that AMACO's products contained non-asbestiform tremolite" and a reasonable policyholder would not understand that non-asbestiform tremolite is not actually asbestos (Filing No. 51 at 12). AMACO cites its own Amended Complaint for this assertion, but the Amended Complaint merely states that "AMACO was informed that R.T. Vanderbilt's talc used by AMACO may have contained a non-asbestiform tremolite." (Filing No. 24 at 4). AMACO fails to explain why non-asbestiform is relevant, merely stating "[a]t minimum, there is a reasonable dispute as to whether non-asbestiform tremolite qualifies as asbestos," and "the Court should construe the Asbestos Exclusion in AMACO's favor and deny Defendant's Motion to Dismiss." (Filing No. 51 at 12). AMACO provides no evidence of such a dispute, and AMACO's own Amended Complaint contradicts this assertion by stating that "asbestos" is the asbestiform varieties of six minerals including tremolite

11

(Filing No. 24 at 4). Thus, there is no ambiguity in whether non-asbestiform tremolite constitutes asbestos—it does not. As such, this argument fails.

3. **Whether "Asbestos" Is Ambiguous**

AMACO argues that Cincinnati could have defined the term "asbestos" to include art clay, talc, or non-tremolite asbestiform, but it did not (Filing No. 51 at 13). AMACO believes that by not defining "asbestos," Cincinnati has provided an impermissibly vague exclusion which is therefore unenforceable. *Id.* AMACO argues that this vagueness is akin to the vagueness of the "petroleum products" exclusion in *Continental Insurance Co. v. George J. Beemsterboer, Inc.*, 148 F. Supp. 3d 770, 775–776 (N.D. Ind. 2015). In *George J. Beemsterboer*, the insurer argued that it was not liable for damage caused by pet coke—a byproduct of oil refining—due to an exclusion that applied to "petroleum products." *Id.* The court found that the exclusion was ambiguous and unenforceable. *Id.* at 790.

In opposition, Cincinnati asserts that these circumstances are similar to *Indiana Farmers Mutual Insurance Co. v. HomeWorks Management. Corp.*, 201 N.E.3d 666 (Ind. Ct. App. 2022) (Filing No. 30 at 9). In *HomeWorks*, the court upheld a policy exclusion that barred coverage for "[a]ctual or alleged, threatened or suspected 'bodily injury', 'property damage', 'personal and advertising injury' or medical payments arising out of 'asbestos' or 'lead.'" *Id.* at 668. The policy further defined "lead" as "lead or compounds or products containing lead in any form or a mixture or combination of lead and other dust or particles." *Id.*

This case is akin to *HomeWorks*. The Asbestos Exclusions contained in Cincinnati's policies apply to "asbestos, in any form or which may be transmitted in any manner." (Filing No. 24 at 8, Filing No. 1-25 at 5). Though Cincinnati does not expressly define asbestos, these Absestos Exclusions are like the exclusion in *HomeWorks* because both exclusions apply to lead or asbestos

12

"in any form." *Id.*; 201 N.E.3d at 668. Further, in *George J. Beemsterboer*, the insurer essentially conceded that "petroleum products" was ambiguous by failing to reply to such argument in its briefs. 148 F. Supp. 3d at 790. Here, there is no such concession.

The term "asbestos" is unambiguous. AMACO attempts to equate a failure to define a term with such term having an ambiguous meaning. As stated above, failure to define a term does not make it ambiguous. *Erie*, 99 N.E.3d at 630. AMACO's argument is also unpersuasive as its own Amended Complaint concisely provides an understanding of exactly what "asbestos" means ([Filing No. 24 at 4-5](#)). AMACO's Amended Complaint provides that "asbestos" is a term for the asbestiform varieties of six hydrated silicates: chrysotile, amosite, crocidolite, anthophyllite, tremolite, and actinolite. *Id.* at 4 (citing 30 C.F.R. § 71.702). Further, the asbestiform and non-asbestiform varieties are different from one another—the asbestiform varieties exhibit long parallel growth patterns that splinter into fibers and fibrils, which pose significant risk to human health, compared to non-asbestiform varieties which are short, multi-directional growth patterns which break down into shorter, thicker cleavage patterns that are not harmful to humans. *Id.* Federal agencies have limited the regulation of "asbestos" to only those minerals characterized by the asbestiform habit. *Id.* Thus, by AMACO's own assertions, the term "asbestos" has a very detailed meaning not susceptible to a reasonable dispute.

Lastly, AMACO asserts that a construction consistent with Cincinnati's argument would cause the Asbestos Exclusions to be unacceptably broad because they could "apply to any talc-related product." ([Filing No. 51 at 14](#)). The Court disagrees. The Asbestos Exclusions may only bar coverage for talc-related product liability if such liability is premised on asbestos exposure. However, if a talc-related product causes some other injury which is not related to asbestos, then the Asbestos Exclusions would not apply. Said differently, the Asbestos Exclusions do not apply

13

to talc products unless such products are alleged to have contained asbestos. This is not unacceptably broad.

Because the Lawsuits allege personal injury for asbestos exposure due to contact with AMACO's products and the Asbestos Exclusions expressly bar coverage for bodily injury which arises out of asbestos in any form or manner, Cincinnati's policies do not provide coverage for the Lawsuits. Cincinnati therefore has no duty to defend the Lawsuits and Count II: Breach of Contract is **dismissed**.

**C.      Count III: Breach of The Duty of Good Faith**

"To prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability." *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). Moreover, "a good faith dispute concerning insurance coverage cannot provide the basis for a claim in tort that the insurer breached its duty to deal in good faith with its insured." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 976 (Ind. 2005).

Cincinnati argues that AMACO's bad faith claim should be dismissed because there is no coverage under the policies in relation to the Lawsuits (Filing No. 30 at 12). Cincinnati further cites *Freidline*, arguing that an insurer does not act in bad faith when there is a rational basis for the insurer's actions when denying an insured's request to defend and indemnify the insured. 774 N.E.2d at 42.

AMACO cites *HemoCleanse, Inc. v. Philadelphia Indemnity Insurance Co.*, arguing that it may have a claim for bad faith so long as there is more at issue than simply the coverage determination (Filing No. 51 at 15 (citing 831 N.E.2d 259, 264 (Ind. Ct. App. 2005) ("[A]n insurer may exhibit bad faith in, for example, its handling of the claim such that even if it engages in a

14

good faith dispute over coverage it may still breach the covenant of good faith and fair dealing."))). AMACO argues that Cincinnati failed to conduct a reasonable investigation into the facts of the Lawsuits and consciously issued a wrongful coverage determination, constituting bad faith.

First, it is well established in Indiana that "[t]he lack of diligent investigation alone is not sufficient to support an award" for a breach of the duty of good faith. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993); *see also Freidline*, 774 N.E.2d at 40; *Erie Ins. Exch. v. Craighead*, 192 N.E.3d 195, 204 (Ind. Ct. App. 2022); *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 732 (Ind. Ct. App. 2008) (internal citations omitted). Therefore, AMACO's assertions do not amount to a bad faith claim based on Cincinnati's handling of the claim.

Second, AMACO's argument that there was a conscious wrongful denial fails because there was a legitimate basis for denying coverage. As discussed above, the Asbestos Exclusions clearly bar coverage for the Lawsuits. It is also important to note that AMACO has not pleaded facts which evidence any dishonesty or ill will. *Colley v. Ind. Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998) ("A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will."). AMACO merely provides the naked assertion that Cincinnati knew its coverage determination was wrongful.

AMACO's last argument to save its bad faith claim is that dismissal is inappropriate at this stage in the litigation (Filing No. 51 at 15). AMACO argues that the Northern District of Indiana has denied insurers' motions to dismiss in comparable scenarios, citing *Frye v. Auto-Owners Insurance Co.*, No. 13-CV-113, 2014 U.S. Dist. LEXIS 43155, at *4 (N.D. Ind. Mar. 31, 2014) (denying motion for summary judgment because plaintiffs did not have an opportunity to conduct discovery into their bad faith allegations). *See also Westfield Ins. Co. v. S&L Builders, LLC*, No. 19-CV-1026, 2020 U.S. Dist. LEXIS 106437, at *6 (N.D. Ind. June 17, 2020) (denying motion to

bifurcate discovery on grounds that a bad faith claim does not necessarily rise or fall solely on the coverage question); *Smith v. PH Mortg. Corp.*, No. 15-cv-10, 2015 U.S. Dist. LEXIS 91351, at *7 (N.D. Ind. July 14, 2015) ("[I]t would be premature at this stage of the proceedings to find that [plaintiff's] bad faith claim is entirely dependent on her breach of contract claim."). However, AMACO's bad faith claim does not entirely depend on the breach of contract claim. The Indiana Supreme Court has held that while the exact extent of an insurer's duty to deal in good faith has not been defined, some general principles apply:

> [t]he obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Magwerks*, 829 N.E.2d at 975. AMACO's Amended Complaint pleads none of the above circumstances. The only circumstances AMACO does plead, the failure to conduct a reasonable investigation, do not constitute bad faith as a matter of law, as stated above.

Any further discovery is unnecessary. Nothing in the pleadings leads to anything more than a conclusion that this case concerns a coverage determination based on the clear and unambiguous Asbestos Exclusions contained in Cincinnati's policies. Thus, Count III: Breach of the Duty of Good Faith fails as a matter of law and is **dismissed**.

**D.    Count I: Declaratory Judgment**

AMACO specifically requests that the Court "[d]eclare [Cincinnati] liable to AMACO under the [p]olicies for past and future attorneys' fees and all costs and expenses under its duty to defend AMACO under the policies regarding the Lawsuits." (Filing No. 24 at 33). However, "declaratory judgments are not independent causes of action; they are a form of remedy for an underlying cause of action." *Johnson v. Am. Fam. Ins. Co.*, No. 22-cv-214, 2023 U.S. Dist. LEXIS

16

57193 (W.D. Wis. Mar. 31, 2023) (citing *Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010) ("[A] federal court applying the Declaratory Judgment Act must evaluate the parties' rights based on the same body of substantive law that would apply in a conventional action.")).

A declaratory judgment is available in two distinct fact situations:

(1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision.

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987). However, "[i]f the substantive claim can resolve the issues raised by the declaratory judgment action, the declaratory judgment action 'serve[s] no useful purpose.'" *Hani Inc. v. United States*, No. 22-CV-1537, 2023 U.S. Dist. LEXIS 67882, at *5 (S.D. Ill. Apr. 18, 2023) (second alteration in original) (quoting *Tempco Elec. Heater Corp.*, 819 F.2d at 749).

Here, AMACO's declaratory judgment claim fails for two reasons. First, AMACO has already brought a suit for damages on the same grounds. Second, a declaratory judgment serves no useful purpose, as the analysis for AMACO's declaratory judgment claim and breach of contract claim are the same, and AMACO will receive the same relief through its substantive breach of contract claim. AMACO essentially asks the Court to declare the parties' contractual duties and that Cincinnati is liable under the contract for breach. Thus, Count I: Declaratory Judgment is **dismissed**.

E.   **Dismissal With Prejudice**

Cincinnati asks the Court to dismiss the Amended Complaint with prejudice, and AMACO has not requested leave to file a Second Amended Complaint (Filing No. 55 at 2). AMACO's Amended Complaint shall be dismissed with prejudice because any amendment would be futile.

*See Bethany Pharmacal Co. v. QVC, Inc.,* 241 F.3d 854, 860-861 (7th Cir. 2001) ("Although leave to amend a complaint should be freely granted when justice so requires, the district court need not allow an amendment . . . when the amendment would be futile." (citation omitted)). "An amendment is futile when it 'merely restates the same facts using different language, or reasserts a claim previously determined.'" *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (quoting *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir. 1983)). An amendment would also be futile if it "'fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.'" *Crestview Vill. Apts. v. U.S. Dep't of Housing & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004) (quoting *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991)). Here, any amendment would merely reassert the same claims previously determined and would not survive another motion to dismiss. Thus, AMACO's Amended Complaint is **dismissed with prejudice**.

## IV.  CONCLUSION

For the above reasons, Cincinnati's Motion to Dismiss the Amended Complaint (Filing No. 29) is **GRANTED**. AMACO's claims are all **dismissed with prejudice**.

Final judgment will issue under separate order.

**SO ORDERED.**

Date:  3/31/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Matthew Thomas Albaugh
Taft Stettinius & Hollister LLP
malbaugh@taftlaw.com

Danielle Rose Chidiac
Plunkett Cooney
dchidiac@plunkettcooney.com

David Guevara
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
dguevara@taftlaw.com

John Frederick Huldin
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
JHuldin@taftlaw.com

Zakariah A. Kulam
Taft Stettinius & Hollister LLP
zkulam@taftlaw.com

Lauren Beth McMillen
PLUNKETT COONEY, P.C.
lmcmillen@plunkettcooney.com

Nicole C. Ruggirello
PLUNKETT COONEY (Bloomfield Hills)
nruggirello@plunkettcooney.com